## SHOTT v
## BANK OF COMMERCE & TRUST CO et

Ohio Appeals, 1st Dist, Hamilton Co

No 4996. Decided March 24, 1936

B. Wm. Heidkamp, Cincinnati, and Arthur F. Shott, Cincinnati, for plaintiff in error.

Matthews & Matthews, Cincinnati, and Alton E. Purcell, Cincinnati, for defendants in error.

FUNK, PJ, WASHBURN and STEVENS, JJ, (9th Dist) sitting by designation.

## OPINION

By WASHBURN, J.

Hannah Shott, plaintiff in the trial court, and, through her executor (she having died since the filing of the case in this court) plaintiff in error in this court, will be referred to as if living, and the principal defendant, the Bank of Commerce & Trust Co., will be referred to as if it were not in liquidation.

Plaintiff, being the owner of $25,000, par value, of Federal Farm Loan bonds, deposited the same with said bank as security for indebtedness to said bank, to be thereafter incurred by the Mercantile Brokerage Co., a corporation owned and conducted by two sons of the plaintiff.

Plaintiff claims that by the oral agreement made with her and said brokerage company by said bank, said indebtedness was to extend over a period of three years, and that the loans made to said brokerage company were to aggregate $100,000, and that after said loans aggregated $60,000, said bank breached its said contract by refusing further loans and selling said bonds and applying the proceeds thereof upon the indebtedness of said brokerage company.

Plaintiff prayed for judgment for $25,000 and interest from the date of said claimed breach.

The bank answered, denying said agreement as claimed, and its breach, and alleging that plaintiff deposited said bonds with said bank "as collateral to secure any indebtedness which was then owing, or which might thereafter be contracted, by the Mercantile Brokerage Co., and it was agreed that when all of the indebtedness due" from said company "had been paid in full, then" said bonds "shall be surrendered to Hannah Shott."

The bank further alleged that so long as said brokerage company was not in default, the plaintiff, in accordance with the agreement, was permitted to detach all matured coupons from said bonds, and that after such default said bank gave due notice to plaintiff and said brokerage company of said bank's intention to sell said bonds to satisfy said indebtedness, and pursuant thereto such sale was made and the proceeds applied on said indebtedness.

The indebtedness of the brokerage company to the bank was for money which the brokerage company loaned on second mortgages, and the brokerage company secured the money by depositing each second mortgage taken by it, with the bank as collateral security for its inedbtedness to the bank, such indebtedness being evidenced by notes of the brokerage company given from time to time as the money was borrowed; and the books and records of the bank showed each note given as a separate transaction, except that the collateral, including said bonds of plaintiff, was security for all of the indebtedness of the brokerage company. Said notes were short-time notes and were renewed from time to time, but the books of the bank did not show the granting of any line of credit to the brokerage company or any obligation to continue such transactions for any definite period or in any aggregate amount, and at the time of the trial none of the living officials or agents of the bank knew of any such obligation.

The cause was submitted to a jury, which returned a verdict in favor of said bank.

A controlling issue in the case was was as to whether the bank entered into a contract to loan the brokerage company $100,000 or to extend to it an absolute line of credit for said amount.

Assuming that plaintiff was so connected with said transaction as to entitle her to recover if, by reason of said claimed breach, the sale of her collateral was wrongful, she nevertheless could not recover in this case if there was no such contract binding upon the bank.

That issue was fairly submitted to the jury by the trial court, and the jury found against the plaintiff.

Such finding was not only not against the weight of the evidence, but was fully justified by the evidence.

There was no evidence of the making of any such contract in accordance with the requirements of §§710-61-62 and -63, GC, and there was no evidence of express authority being conferred upon any officer of the bank to make such a contract, and there was no evidence of such a course of dealing with the world as clearly implied authority in any officer of the bank to make such a contract.

In view of the foregoing conclusions, it was not prejudicial error for the trial court to refuse the request made at the conclusion of the charge of the court "to give the jury a legal definition as to what constitutes

apparent authority," and there was no prejudicial error in the parts of the charge of the court about which complaint is made in the brief of counsel.

In the early part of November, 1930, the plaintiff was refused the right to clip and collect the coupons on her said bonds so deposited as collateral, and it is urged that the finding of the jury that at that time the brokerage company was in default is against the weight of the evidence.

Long before that time the bank had demanded additional security, and, the same not being furnished, it refused to accept second mortgages as collateral and to advance any more money to said brokerage company.

And long before that time it was apparent to all concerned that the indebtedness of said brokerage company was greatly in excess of the value of the collateral securing the same, and for some time the brokerage company had been in the process of liquidation by, collections on said mortgages by the brokerage company and the application of such collections on its said indebtedness to said bank.

To facilitate such liquidation, the bank from time to time renewed the notes evidencing such indebtedness for 30-day periods. Such renewal period expired at about the time plaintiff was refused such coupons, and there is a conflict in the evidence as to the exact time of such refusal and as to whether, at the time of such refusal, said renewal period had expired, but it was apparent to all concerned that the brokerage company could not pay its indebtedness and that the collateral was inadequate to secure the same.

The finding of the jury that the brokerage company was then in default is not only against the weight of the evidence, but is fully justified by the evidence.

Judgment affirmed.

FUNK, PJ, and STEVENS, J, concur in judgment.